ORDERED UNSEALED on 04/28/2022   s/ dominicf



~~SEALED~~

s/ dominicf

FILED
Apr 15 2022
CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY   s/ charlest   DEPUTY

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

August 2021 Grand Jury

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        Plaintiff,<br><br>   v.<br><br>THUY CAM TRAN (1),<br>   aka "Tammy,"<br>SAYA SOUVANNASENG (2),<br>   aka "Too Short,"<br>ALEXANDER DAM (3),<br>SOPHORN DIN PHOUNG (4),<br>   aka "Scooby,"<br><br>        Defendants. | Case No. 22CR0330-LL<br><br>I N D I C T M E N T<br>**(Superseding)**<br><br>Title 18, U.S.C., Secs. 922(g)(1) and 924(a)(2) – Felon in Possession of a Firearm and Ammunition; Title 18, U.S.C., Sec. 371 – Conspiracy; Title 18, U.S.C., Sec. 1955 – Illegal Gambling Business; Title 21, U.S.C., Sec. 856(a)(1) – Maintaining a Drug-Involved Premises; Title 18, U.S.C., Sec. 2 – Aiding and Abetting; Title 18, U.S.C., Secs. 924(d) and 981(a)(1)(C), Title 21, U.S.C., Sec. 853, Title 18, U.S.C., Secs. 981(a)(1)(C) and 1955(d), and Title 28, U.S.C., Sec. 2461(c) – Criminal Forfeiture |

The grand jury charges:

## Count 1

FELON IN POSSESSION OF A FIREARM AND AMMUNITION

[18 U.S.C. §§ 922(g)(1) & 924(a)(2)]

1. On or about January 28, 2022, within the Southern District of California, defendant SAYA SOUVANNASENG, aka "Too Short," knowing his status as a convicted felon, that is, a person who had previously been convicted in a court of a crime punishable by imprisonment for a term

MCB:nlv(2):San Diego:4/14/22

exceeding one year, did knowingly possess a firearm that travelled in and affected interstate commerce, to wit: a Smith & Wesson, M & P Shield, .40 caliber, serial number JNF2451 and six rounds of .40 caliber ammunition; in violation of Title 18, United States Code, Sections 922(g)(1) and 924(a)(2) - Felon in Possession of a Firearm and Ammunition.

## Count 2

CONSPIRACY

[18 U.S.C. § 371]

2. Beginning at a date unknown to the grand jury and continuing up to on or about the date of this Indictment, within the Southern District of California, and elsewhere, defendants THUY CAM TRAN, aka "Tammy," SAYA SOUVANNASENG, aka "Too Short," ALEXANDER DAM, and SOPHORN DIN PHOUNG, aka "Scooby," (collectively hereinafter "Defendants"), and others known and unknown to the grand jury, did knowingly and intentionally conspire to commit offenses against the United States as set forth below:

    a. Operating an Illegal Gambling Business, in violation of Title 18, United States Code, Section 1955, and,

    b. Maintaining a Drug-Involved Premises, in violation of Title 21, United States Code, Section 856(a)(1).

### MANNER AND MEANS OF CONSPIRACY

3. In furtherance of this conspiracy and to effect the objects thereof, Defendants and other co-conspirators utilized the following manner and means, among others:

    a. It was a part of the conspiracy that the Defendants and other co-conspirators engaged in the business of operating illegal

gambling establishments in violation of California Penal Code, Sections 330a and 330.1.

     b.  It was a further part of the conspiracy that Defendants and other co-conspirators engaged in business of operating illegal gambling establishments and maintaining drug involved premises by equipping the illegal gambling establishments with electronic gambling machines which were programmed with several games of chance such as poker, blackjack, keno, jacks or better, and slot games.

     c.  It was a further part of the conspiracy that Defendants and other co-conspirators engaged in the business of operating illegal gambling establishments and maintaining drug involved premises by operating the gambling establishments seven days a week, twenty-four hours a day.

     d.  It was a further part of the conspiracy that Defendants and other co-conspirators engaged in the business of operating illegal gambling establishments and maintaining drug involved premises by outfitting the illegal gambling establishments with exterior and interior video surveillance cameras, which were often monitored remotely by the establishment owners and managers. Those locations equipped with surveillance equipment often contain monitors showing live feed of the video surveillance.

     e.  It was a further part of the conspiracy that Defendants and other co-conspirators engaged in the business of operating illegal gambling establishments and maintaining drug involved premises by conducting audits of the gambling machines, which often took in more than $3000 per day. Such audits were often carried out several times in a twenty-four-hour period when the bank roll reached a specified amount, such as $2,000. This was done to reduce potential losses to the business

from robbery and law enforcement seizures. The employees kept the patrons at a distance or directed them to step outside during the audits to reduce the risk of patrons robbing the business. The audits were conducted by trusted employees who used a key to unlock and open the gambling machines, retrieved the money from inside of the machines, photographed the master audit screen of each machine showing the cash in, cash out (winnings), and net gain/profit per machine, and clearing the screen after each audit. Employees provided the master audit screen photographs with the owners/managers. The employees would also document the cash in, cash out, net gain, loans to customers, and other information in paper ledgers.

      f.    It was further part of the conspiracy that Defendants and other co-conspirators engaged in the business of operating illegal gambling establishments and maintaining drug involved premises by employing individuals in specific roles to operate the illegal gambling establishments. The roles included:

      g.    A "doorman" who acted as an enforcer to handle disturbances within the illegal gambling establishment, screened patrons for entry into the illegal gambling establishment, monitored the video surveillance equipment, and reacted to law enforcement presence.

      h.    A "banker" who carried the "bank roll," meaning the money to provide change and winnings to customers. One or two bankers worked inside each establishment at any given time.

      i.    It was a further part of the conspiracy that Defendants and other co-conspirators communicated by electronic means, such as cellular telephones and messaging applications, and discussed the operation of illegal gambling establishments.

j. It was further part of the conspiracy that Defendants and other co-conspirators engaged in the business of operating illegal gambling establishments and maintaining drug involved premises by allowing patrons to possess and use controlled substances, typically methamphetamine, while gambling. The ability to consume controlled substances while gambling enticed the patrons to frequent the illegal gambling establishments.

k. It was further part of the conspiracy that Defendants and other co-conspirators engaged in the business of operating illegal gambling establishments and maintaining drug involved premises by allowing the distribution of controlled substances inside the illegal gambling establishments patrons were enticed to frequent the illegal gambling establishment.

l. It was further part of the conspiracy that from at least as early as April 26, 2021 until June 9, 2021, Defendants, operated an illegal gambling establishment at 3555 Central Avenue, San Diego, California, (Gaming Den #1) with approximately 13 electronic gambling machines.

m. It was further part of the conspiracy that from at least as early as August 27, 2021, until January 12, 2022, Defendants, operated an illegal gambling establishment at 4079½ Winona Avenue, San Diego, California, (Gaming Den #2) with approximately 10 electronic gambling machines.

n. It was further part of the conspiracy that from on or about January 18, 2022, until February 27, 2022, Defendants, re-opened and operated an illegal gambling establishment at 4079½ Winona Avenue, San Diego, California, (Gaming Den #2) with electronic gambling machines.

## OVERT ACTS

4. In furtherance of this conspiracy and to effect the objects thereof, the following overt acts, among others, were committed within the Southern District of California, and elsewhere:

   a. On April 29, 2021, defendant ALEXANDER DAM worked as a banker at Gaming Den #1. On that same day, ALEXANDER DAM sent a message to THUY CAM TRAN, aka "Tammy," stating, "Did you want me to come to you to get bank?" THUY CAM TRAN, aka "Tammy," responded, "No…I come to you guy." ALEXANDER DAM responded, "The homie is at 750. So you might wanna bring more..he cash out 700."

   b. On May 2, 2021, defendant SAYA SOUVANNASENG, aka "Too Short," worked as a banker at Gaming Den #1.

   c. On May 3, 2021, defendant ALEXANDER DAM worked as a banker at Gaming Den #1. On that same day, THUY CAM TRAN, aka "Tammy," sent a message to ALEXANDER DAM stating, "Will be there at 10:45.. audit at 11." ALEXANDER DAM responded, "Sounds good…park in front, its easier for you."

   d. On May 6, 2021, defendant THUY CAM TRAN, aka "Tammy," sent a message to defendant SOPHORN DIN PHOUNG, aka "Scooby," stating, "I trusting you that is why I let you be the banker 3 times n you messing up n door you messing up too." SOPHORN DIN PHOUNG, aka "Scooby," responded, "I tried to make it right and the last time I banked I out my own tip money so I was gonna makebesurebu guys aren't short". TRAN responds, "You messing up all those times one time you lost over 1000 dollars common homie." SOPHORN DIN PHOUNG, aka "Scooby," responded, "[T]he last time I banked it was plus 146 dollars."

   e. On May 19, 2021, defendant SOPHORN DIN PHOUNG, aka "Scooby," arranged to sell methamphetamine to an individual at Gaming

Den #1. To facilitate the sale, SOPHORN DIN PHOUNG, aka "Scooby," engaged in a text message exchange with an unknown individual, "Dimpz Ma." On May 12, 2021, "Dimpz Ma" sent a message to defendant SOPHORN DIN PHOUNG, aka "Scooby," stating, "Can I get some shit to smoke b4 I leave to new Mexico.. When do you come to in at Central." On May 19, 2021, "Dimpz Ma" sent a message to SOPHORN DIN PHOUNG, aka "Scooby," stating, "You got shit..i buy." SOPHORN DIN PHOUNG, aka "Scooby," responded, "Central and yes I do… come through… how much you want." In response to this message, "DIMPZ Ma" stated, "I only have 100.. so a dub."

  f. On May 14, K.S. worked as the banker at Gaming #1.

  g. On May 15, 2021, defendant THUY CAM TRAN, aka "Tammy," was the only person present at Gaming Den 1, where 13 electronic gambling machines were located, following a shooting in the alley behind Gaming Den #1.

  h. On May 21, 2021, K.S. was present inside Gaming Den #1 with four clear plastic baggies with methamphetamine.

  i. On May 21, 2021, defendants SAYA SOUVANNASENG, aka "Too Short," and SOPHORN DIN PHOUNG, aka "Scooby," were present inside Gaming Den #1. There were 14 operable electronic gambling machines, $1,996.00, a small purple baggie with white crystalline substance suspected to be methamphetamine and gambling ledgers inside Gaming Den #1.

  j. On May 24, 2021, defendant THUY CAM TRAN, aka "Tammy," sent a message to T.O. promoting her illegal gambling business. The message stated, "Every month I make 100,000."

  k. On May 27, 2021, defendant THUY CAM TRAN, aka "Tammy," sent a message to R.R. promoting her illegal gambling business. The message stated, "We reopening business this sunday 3555 central ave."

7

l.  On June 9, 2021, K.S., defendants THUY CAM TRAN, aka "Tammy," SAYA SOUVANNASENG, aka "Too Short," and ALEX DAM, along with ten other individuals identified as patrons, were present inside Gaming Den #1. Ten operable electronic gambling machines, $2348.00, and a money bag with trace amounts of white crystalline substance suspected to be methamphetamine were inside Gaming Den #1.

m.  On June 9, 2021, defendant THUY CAM TRAN, aka "Tammy," possessed seven full sized electronic gambling machines, one table-top electronic gambling machine, and $133,383.00 in gambling proceeds at 5112 Walsh Way, San Diego, California.

n.  On September 4, 2021, defendant SAYA SOUVANNASENG, aka "Too Short," was present in Gaming Den #2. Ten operable electronic gambling machines, approximately $1000.00, two small baggies containing a substance suspected to be methamphetamine, and drug paraphernalia were inside Gaming Den #2.

o.  On January 28, 2022, defendant SAYA SOUVANNASENG, aka "Too Short," was working at Gaming Den #2, and was found to be in possession of a firearm, as alleged in Count 1.

All in violation of Title 18, United States Code, Section 371.

Count 3

ILLEGAL GAMBLING BUSINESS

[18 U.S.C. §§ 1955 & 2]

5.  The allegations set forth in paragraphs 3 and 4 are realleged and incorporated by reference as if fully set forth herein.

6.  Beginning on a date unknown to the grand jury and continuing up to on or about the date of this indictment, within the Southern District of California and elsewhere, defendants THUY CAM TRAN, aka "Tammy," SAYA SOUVANNASENG, aka "Too Short," ALEXANDER DAM, and

SOPHORN DIN PHOUNG, aka "Scooby," and others, knowingly and intentionally conducted, financed, managed, supervised, directed, and owned all and part of an illegal gambling business involving the operation of electronic gambling machines, which gambling business was a violation of the law of the State of California in which it was conducted (that is, in violation of California Penal Code, Sections 330a, and 330.1) and which involved at least five persons who conducted, financed, managed, supervised, directed, and owned all and part of the illegal gambling business, and which remained in substantially continuous operation for a period in excess of thirty days and had a gross revenue of at least $2,000 in any single day; in violation of Title 18, United States Code, Sections 1955 and 2.

### Count 4

MAINTAINING A DRUG INVOLVED PREMISES

[21 U.S.C. § 856(a)(1) & 18 U.S.C. § 2]

7. The allegations set forth in paragraphs 3 and 4 are realleged and incorporated by reference as if fully set forth herein.

8. Beginning on a date unknown to the grand jury, but at least as early as April 26, 2021, and continuing up to on or about June 9, 2021, within the Southern District of California, defendants THUY CAM TRAN, aka "Tammy", SAYA SOUVANNASENG, aka "Too Short", ALEXANDER DAM, and SOPHORN DIN PHOUNG, aka "Scooby", and others known and unknown to the grand jury knowingly opened, leased, rented, used and maintained any place, permanently and temporarily, namely: 3555 Central Avenue, San Diego, California; for the purpose of manufacturing, distributing, and using controlled substances; all in violation of Title 21, United States Code, Sections 856(a)(1) and Title 18, United States Code, Section 2.

## FORFEITURE ALLEGATIONS

9. The allegations contained in Counts 1 through 4 are realleged and by their reference fully incorporated herein for the purpose of alleging forfeiture to the United States of America pursuant to Title 18, United States Code, Sections 981(a)(1)(C) and 1955(d), and Title 28, United States Code, Section 2461(c), and Title 21, United States Code, Section 853.

### Forfeiture Allegation as to Count 1

10. Upon conviction of the offense alleged in Count 1 of this Indictment, defendant SAYA SOUVANNASENG, aka "Too Short," shall forfeit to the United States, pursuant to Title 18, United States Code Section 924(d), and Title 28, United States Code, Section 2461(c), all firearms and ammunition involved in the commission of the offense, including but not limited to, a Smith & Wesson, M & P Shield, .40 caliber, serial number JNF2451.

### Forfeiture Allegation as to Counts 2 & 3

11. Upon conviction of the offense alleged in Counts 2 and 3 of this Indictment, and pursuant to Title 18, United States Code, Sections 981(a)(1)(C) and 1955(d), and Title 28, United States Code, Section 2461(c), defendants THUY CAM TRAN, aka "Tammy", SAYA SOUVANNASENG, aka "Too Short", ALEXANDER DAM, and SOPHORN DIN PHOUNG, aka "Scooby," shall forfeit to the United States all their rights, title and interest in any and all property, real or personal, which constitutes or is derived from proceeds, traceable to the offense, and any property, including, but not limited to, currency used in violation of the offense.

//
//
//

## Forfeiture Allegation as to Counts 2-4

12. Upon conviction of any of the felony offenses alleged in Counts 2 through 4 of this Indictment, said violations being punishable by imprisonment for more than one year and pursuant to Title 21, United States Code, Sections 853(a)(1) and 853(a)(2), defendants THUY CAM TRAN, aka "Tammy", SAYA SOUVANNASENG, aka "Too Short", ALEXANDER DAM, and SOPHORN DIN PHOUNG, aka "Scooby", shall forfeit to the United States all rights, title and interest in any and all property constituting, or derived from, any proceeds the defendants obtained, directly or indirectly, as the result of the offenses, and any and all property used or intended to be used in any manner or part to commit and to facilitate the commission of the violations alleged in Counts 2 through 4 of this Indictment.

## Specific Property

13. Based on the above forfeiture allegations for Counts 1 through 4, the property to be forfeited includes, but is not limited to: Smith & Wesson, M & P Shield, .40 caliber, serial number JNF2451, fourteen electronic gambling machines seized from 3555 Central Ave, San Diego, California; $1,996 in US Currency seized from 3555 Central Ave, San Diego, California; ten electronic gambling machines seized from 3555 Central Ave, San Diego, California; $2,348 in US Currency seized from 3555 Central Ave, San Diego, California; seven full sized and one table top electronic gambling machines seized from 5112 Walsh Way, San Diego, California; and $133,383 in US Currency seized from 5112 Walsh Way, San Diego, California.

14. If any of the above-described forfeitable property, as a result of any act or omission of the defendants:

//

    a. cannot be located upon the exercise of due diligence;

    b. has been transferred or sold to, or deposited with, a third party;

    c. has been placed beyond the jurisdiction of the court;

    d. has been substantially diminished in value; or

    e. has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), and Title 28, United States Code, Section 2461(c), to seek forfeiture of any other property of the defendants up to the value of the forfeitable property described above as being subject to forfeiture.

All pursuant to Title 21, United States Code, Section 853, Title 18, United States Code, Sections 981(a)(1)(C) and 1955(d), and Title 28, United States Code, Section 2461(c).

  DATED: April 15, 2022.

RANDY S. GROSSMAN
United States Attorney

By: _____
  A. DALE BLANKENSHIP
  Assistant U.S. Attorney

By: _____
  MATTHEW BREHM
  Assistant U.S. Attorney